## OPINION.

LANSDON: To support his refusal to permit the taxpayer and the Bay State Erecting Co. to file consolidated income-tax returns for the years 1918, 1919, and 1920, the Commissioner relies (1) on the fact that, during the years involved, B. Devereux Barker was the owner of record of 48 shares of the common stock of the taxpayer and was not a stockholder of the Bay State Erecting Co., and (2) that for the same years James A. McDonald was the owner of 33 shares of the common stock of the Bay State Erecting Co., and was not a stockholder of the taxpayer.

The Board can not agree with the first contention of the Commissioner. The evidence is clear that, from July 5, 1916, and, through all the years in question, Gustin was the owner in fact of the shares of stock which, during that time, stood in the name of Barker on the stock-book of the taxpayer. In all the circumstances, the stock was the property of Gustin. See the case of *Brick* v. *Brick*, 98 U. S. 514.

The second contention of the Commissioner depends upon the meaning of the word "controlled," as used in section 204 (b) of the Revenue Act of 1918. With respect to the stock of the Bay State Erecting Co., owned by McDonald, it is clear that Shine and Gustin were free, at all times, to assert control. In the circumstances, both corporations were in fact controlled equally by Shine and Gustin and were therefore entitled to make consolidated income and profits tax returns by reason of the ownership or control of their stock by closely affiliated interests.

---

Appeal of **POMEROY BROS., INC.**                    Docket No. 1193.

Additional compensation for services of corporate officers disallowed.

Submitted March 30, 1925; decided April 14, 1925.

*A. W. Torbet, C. P. A.*, for the taxpayer.
*W. D. Nance, Esq.*, for the Commissioner.

Before STERNHAGEN, TRAMMELL, and PHILLIPS.

This appeal involves income and profits taxes for 1919 and 1920 in the amount of $5,185.39. The question involved is the propriety of the disallowance by the Commissioner of $8,888.88 for 1919, and $8,888.90 for 1920, as additional compensation designated as bonuses paid by the corporation to its officers during those years. The appeal was submitted on an agreed statement of facts, which is set out in the following

### FINDINGS OF FACT.

Pomeroy Brothers, Inc., is a corporation organized December 26, 1917, under the laws of the State of Illinois, with outstanding capital stock of $100,000, consisting of 1,000 shares of the par value

of $100 each, and has its principal office in Chicago. It was engaged in the business of manufacturing men's neckwear and as jobbers in men's neckwear, belts, handkerchiefs, and similar furnishings.

The following is a complete list of the stockholders, together with the amount of stock held by each, during the years involved:

|  | Shares |
|---|---|
| J. P. Pomeroy | 450 |
| G. S. Pomeroy | 450 |
| W. A. Reidl | 100 |

J. P. Pomeroy was president of the corporation, G. S. Pomeroy was secretary-treasurer, and W. A. Reidl was vice president.

In December, 1917, the board of directors, by resolution, fixed the salary of the president and secretary-treasurer at $6,000 each per year for a period of three years. At the same time, another resolution was passed authorizing the corporation to enter into an agreement with the president and secretary-treasurer that their salaries should not be increased for a period of three years. In 1918 the president and secretary-treasurer each received a salary of $6,000, and the vice president received $3,734.26 as commissions, but no salary.

On June 2, 1919, the following resolution was passed by the board of directors:

Resolved that the salary of the president be increased to the sum of $8,000 payable in monthly installments of $500.00 per month for the months January to June, inclusive, and $833.33 per month for the months of July to December, incl. A bonus of $4,000 to be paid on December 1, 1919, if the funds in the business will permit a withdrawal of that amount.

A similar resolution was passed by the board of directors at the same time with respect to the salary of the secretary-treasurer. The following resolution was passed at the same time with respect to the salary of the vice president:

Resolved that the salary of the vice-president be one-tenth the above amount of the increase over $6,000.00 each (total $12,000) was drawn by the president, and secretary-treasurer.

All three of the officers devoted their entire time and services to the corporation during the years involved. They constituted all the executives of the company. J. P. Pomeroy, president, spent 50 per cent of his time on the road selling, and 50 per cent of his time in connection with the Chicago office. While on the road he received a commission of 10 per cent of all sales made by him, which is the same commission paid to other salesmen. He received $4,051.80 in 1919, and $3,152.09 in 1920, as commissions. He supervised the buying of materials for the corporation and was in charge of all of the company's salesmen. He had been a salesman of men's furnishings for many years.

G. S. Pomeroy devoted his time and services to the general management of the Chicago office, including supervision of the shop for manufacturing the company's product and the supervision of credits and collections.

Reidl devoted all of his time to selling on the road. He received a commison of 10 per cent on all sales made by him. In 1919 he received $6,294.25, and in 1920 $6,246.29, as commissions.

The following is a table of salaries, commissions, and bonuses credited to the three officers during 1918, 1919, and 1920, together with the amounts allowed and disallowed by the Commissioner:

|  | 1918 | 1919 | 1920 |
|---|---|---|---|
| J. P. Pomeroy | $6,000.00 | $6,000.00 | $6,000.00 |
| Increase |  | 2,000.00 | 2,000.00 |
| Commissions |  | 4,051.80 | 3,152.09 |
| Allowed |  | 12,051.80 | 11,152.09 |
| Disallowed bonus |  | 4,000.00 | 4,000.00 |
| G. S. Pomeroy | 6,000.00 | 6,000.00 | 6,000.00 |
| Increase |  | 2,000.00 | 2,000.00 |
| Allowed |  | 8,000.00 | 8,000.00 |
| Disallowed bonus |  | 4,000.00 | 4,000.00 |
| W. A. Reidl | 3,734.26 | [1] 6,294.25 | [1] 6,246.29 |
| Increase |  | 444.44 | 444.44 |
| Allowed |  | 6,738.69 | 6,690.73 |
| Disallowed bonus |  | 888.88 | 888.88 |

[1] Commissions.

In 1919 and 1920 the taxpayer took as deductions on its income-tax returns $1,333.32 as salary to Reidl, which amount was arrived at by taking one-ninth of the increased salaries and bonuses amounting to $12,000 credited to the Pomeroys in each year. The bonuses of $4,000 each to the Pomeroys and $888.88 to Reidl were credited on the books of the corporation on December 31, 1919, instead of December 1, 1919, as provided in the resolution of the board of directors. They were not paid, however, until 1920. The bonuses of $4,000 each to the Pomeroys and $888.90 to Reidl for 1920 were credited on the books on December 31, 1920. Of this amount only $5,544.36 was actually paid. The balance of $3,344.54 was carried on the books of the corporation until December 31, 1922, when it was credited back to surplus. When this amount was credited back to surplus the accounts of the officers were charged on the basis of stockholdings as follows:

```
J. P. Pomeroy, 45 per cent-stock_____ $1,500.04
G. S. Pomeroy, 45 per cent-stock_____  1,500.04
W. R. Reidl, 10 per cent-stock_____    344.46

    Total_____  3,344.54
```

The following table is made up from the 1919 and 1920 income and profits tax returns filed by the taxpayer:

|  | 1919 | 1920 |
|---|---|---|
| Gross sales | $251,743.92 | $226,918.16 |
| Net taxable income | 18,409.41 | 4,612.26 |
| Tax paid | 3,736.44 | 261.23 |
| Total expense for wages, commissions, and salaries, including total compensation to officers | 84,512.32 | 82,853.30 |

The taxpayer deducted on its returns $25,333.32 as compensation paid to officers for each of the years 1919 and 1920, and also took a deduction under the head of " general expenses " of $10,346.05 in

1919, and $9,398.38 in 1920, on account of commissions paid to two of its officers on sales made by them.

The Commissioner allowed as deductions by the corporation, $26,-790.49 in 1919, and $25,842.82 in 1920, as salaries, commissions, and bonuses paid to its officers, and disallowed for 1919, $8,888.88, and $8,888.90 for 1920, on account of bonuses or additional compensation.

#### DECISION.

The determination of the Commissioner is approved.

---

Appeal of **THE POTTS-TURNBULL**   Docket No. 404.
**ADVERTISING CO.**

Under the conditions of fact existing in this appeal the taxpayer is not entitled to classification as a personal service corporation.

Submitted January 19, 1925; decided April 14, 1925.

*Wendell H. Cloud, Esq.*, for the taxpayer.

*J. A. Adams, Esq.*, for the Commissioner.

Before GRAUPNER, LITTLETON, and SMITH.

This appeal is taken from a deficiency in income and profits taxes of $7,718.63 for the calendar year 1918, based upon the disallowance of a claim that the taxpayer is a personal service corporation. From stipulations filed and the oral and documentary evidence submitted, the Board makes the following

#### FINDINGS OF FACT.

1. The taxpayer is a Missouri corporation with its principal offices at 300 Gates Building, Kansas City, Mo. The company was incorporated, at the instance of Henry K. Turnbull, as "The Turnbull Business Development Company," under a certificate of incorporation dated July 19, 1910, with an authorized capital of $5,000, divided into 500 shares of stock of a par value of $10 each, 250 shares being preferred stock and 250 common stock. The stock was subscribed for as follows:

| | Preferred shares. | Common shares. |
|---|---|---|
| Henry K. Turnbull | 205 | 249 |
| David M. Proctor | | 1 |
| Fred Wolferman | 10 | |
| P. S. Harris | 10 | |
| W. E. Rogers | 10 | |

The articles of incorporation recite that at least one-half of the capital stock was actually paid up in lawful money of the United States. The purposes for which the corporation was organized are set forth in its articles of incorporation, as follows: